ESTATE OF JOSEPH CAPORELLA, DECEASED, NICK A. CAPORELLA, PERSONAL REPRESENTATIVE, AND JEAN CAPORELLA, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5213-83. Filed March 4, 1986.

*Theodore F. Brill,* for the petitioners.

*William V. Spatz* and *W. Robert Abramitis,* for the respondent.

JACOBS, *Judge*: Respondent determined the following deficiencies in petitioners' Federal income taxes:

| Tax year | Amount of deficiency |
| --- | --- |
| 1973 | $20,222.56 |
| 1974 | 318.00 |
| 1977 | 2,987.35 |

The 1973 and 1974 deficiencies are attributable to the partial disallowance of a net operating loss carryback from 1976.[1] Petitioners do not challenge the underlying substantive grounds which caused reduction of the claimed net operating loss for 1976 nor do they challenge respondent's determination as to 1977.

The sole issue involved is whether the period for assessing a deficiency against the Caporellas for 1976 expired prior to the date (December 14, 1982) on which respondent issued the notice of deficiency.[2] Resolution of this issue depends upon whether Form 5214 is a general or a restricted consent to extend the period of limitations.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Joseph Caporella and Jean Caporella, husband and wife, filed joint returns from 1971 through 1977. At all relevant times, they resided in Dade County, Florida. Joseph died on

---

[1] The Caporellas filed an application for tentative refund seeking a refund of $25,195 for 1973 and $318 for 1974. Respondent refunded the requested amounts to the Caporellas and subsequently disallowed certain partnership losses claimed in 1976 from two movie tax shelters. Such disallowance did not result in a deficiency for 1976 (because the Caporellas still had no taxable income for 1976); however, it reduced the amount of the claimed net operating loss for 1976 available to be carried back to 1973 and increased the amount of averageable income used to compute the Caporellas' 1974 tax.

[2] The assessment period for a deficiency for the year to which a net operating loss is carried back (here, 1973) remains open until such time as the expiration of the period of limitations for assessing a deficiency for the taxable year of the net operating loss (here, 1976). Sec. 6501(h), I.R.C. 1954.

May 24, 1978; Nick A. Caporella[3] and Robert N. Caporella were appointed co-personal representatives of the Estate of Joseph Caporella.

On their 1971, 1972, and 1973 returns, the Caporellas reported losses from a horse breeding activity. Their returns were selected for audit. In order to avail themselves of the presumption set forth in section 183(d),[4] the Caporellas, in March 1975, filed Form 5213 (Election to Postpone Determination with Respect to the Presumption that an Activity is Engaged in for Profit) and Form 5214 (Consent Extending Period of Limitations for Assessment of Income Tax).[5] The Form 5214 signed by the Caporellas covered only 1971 and extended the date for which a deficiency could be assessed for that year until December 31, 1979. The examination of the Caporellas' returns was expanded, over the years, to cover the years 1971 through and including 1977. On the advice of their accountant, Saul Radler, the Caporellas, on October 10, 1975, signed a second Form 5214 covering the years 1972 through 1976, inclusive. This Form 5214 extended the date for which an assessment for 1972 through 1975 inclusive, could be made until December 31, 1979; the last date for which a deficiency could be assessed for 1976 remained at April 15, 1980.

On their 1976 return, the Caporellas reported adjusted gross income of negative $37,190, which included $199,973 in partnership losses. These partnership losses were comprised in part of losses from two movie tax shelters totaling $34,827. On July 8, 1977, the Caporellas filed an application for tentative refund seeking to carry back from 1976 to 1973 a net operating loss of $41,646 and an unused investment tax credit of $675. Their application was accepted, and on August 9, 1977, they were refunded $25,195

---

[3]Nick A. Caporella filed Form 56 (Notice Concerning Fiduciary Relationship) on Nov. 27, 1979, notifying respondent that he was the person qualified to act as the representative of the Estate of Joseph Caporella in Federal tax matters.

[4]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

[5]Sec. 183(a) provides (with certain exceptions) that an individual may not claim a deduction for any activity not engaged in for profit. Pursuant to sec.183(d), a horse breeding activity is presumed to be one engaged in for profit if a profit is realized from such activity during any 2 or more years in a period of 7 consecutive years. If the taxpayer files Form 5213, the determination as to whether the presumption provided for in sec. 183(d) is applicable is postponed until the end of the 7-year period. In order to prevent the running of the period of limitations (in the event Form 5213 is filed), respondent normally requires the taxpayer to extend the period of limitations for each year in the 7-year period.

for 1973. They also received a refund of $318 for 1974 since they had computed their tax liability for 1974 by income averaging, using 1973 as a base year.

The examination of the Caporellas' horse breeding activity for 1971 through 1977 was reactivated shortly after the Caporellas filed their 1977 return. In late 1979, a third Form 5214, extending until December 31, 1980, the time to assess a deficiency for the years 1971 through 1977, was solicited by Revenue Agent Steven Kapit. This Form 5214 was signed by Jean Caporella on November 29, 1979, and by Nick A. Caporella, as representative of the Estate of Joseph Caporella, on December 4, 1979; however, the third Form 5214 was not executed on behalf of respondent by December 31, 1979,[6] the expiration date of the extended limitations period for 1971 through 1975, as established by the first two Forms 5214.

In March 1980, a Form 872 (Consent to Extend the Time to Assess Tax) covering only 1976 was executed. As a result thereof, the period of limitations for assessing deficiencies for 1976 was extended from April 15, 1980, to December 31, 1980.

The Caporellas' tax audit was assigned to Revenue Agent Paul Goldman after Revenue Agent Kapit's supervisor rejected Kapit's recommendation to allow the losses from the horse breeding activity. Unaware that the third Form 5214 had not been timely executed by respondent, Revenue Agent Goldman solicited a Form 872-A (Special Consent to Extend the Time to Assess Tax) for taxable years 1971 through 1977. Mr. Radler advised Revenue Agent Goldman that he would not allow his clients to sign a Form 872-A, but would accept a "restricted consent." In a subsequent conversation with Revenue Agent Goldman, Mr. Radler specifically requested that his clients be allowed to sign a fourth Form 5214, rather than the Form 872-A, without specifically requesting, or referring to the form as, a restricted consent.

Because he had been requested to use a form other than that which he proferred, Revenue Agent Goldman consulted with his supervisor, Almira Kinickey, who advised him to use the Form 5214 as desired by Mr. Radler. This fourth

---

[6]Respondent executed the third Form 5214 on Oct. 1, 1980.

Form 5214 was executed on September 19, 1980, by petitioners and on October 1, 1980, by Examination Group Manager Stuart Grieper on behalf of respondent. The form provided:

Pursuant to existing internal revenue laws, Joseph T. and Jean Caporella, taxpayer(s) of 6914 Holley Rd., Miami Lakes, Florida 33014, and the Director of Internal Revenue consent and agree as follows:

That the amount(s) of any Federal income tax due under any return(s) made by or on behalf of the above-named taxpayer(s) for the taxable year(s) ended December 31, 1971, 1972, 1973, 1974, 1975, 1976, 1977, under the Internal Revenue Code of 1954, may be assessed at any time on or before December 31, 1982, except that if a notice of deficiency in tax for any such year(s) is sent to the taxpayer(s) on or before that date, then the time for making any assessment therefore shall be further extended for the period in which the making of an assessment is prohibited and for 60 days thereafter.

That any taxable year listed on which the statute of limitations has not begun to run under section 6501 of the Internal Revenue Code will remain open beyond the extension period until the year's normal expiration period.

On November 18, 1980, respondent sent petitioners a "30-day letter" with which was enclosed a copy of the agent's examination report relating to proposed adjustments to the Caporellas' income for tax years 1971 through 1977. The proposed adjustments to income related to the disallowance of losses from the Caporellas' horse breeding activity and the disallowance of losses from the two movie tax shelters.

On December 15, 1980, Mr. Radler requested and received an extension of time to file a written protest in response to the 30-day letter.[7] In his written response dated January 16, 1981, Mr. Radler took exception to the agent's position with respect to both adjustments, but he did not raise as a defense that the period of limitations for 1976 had run.

On September 13, 1982, respondent requested petitioners to sign a Form 872-A extending the statute of limitations for 1976. Petitioners refused to execute the form; and on December 14, 1982, a statutory notice of deficiency was issued upon which this action is based. The statutory notice

---

[7]Respondent's Nov. 18, 1980, letter stated "If we don't hear from you within 30 days, we will have to process your case on the basis of the adjustments shown in the examination report." Mr. Radler requested and received an additional 30 days (from Dec. 18, 1980, to Jan. 17, 1981) to respond to respondent's Nov. 18 letter.

disallowed $34,827 in partnership losses from the two movie tax shelters which were claimed by the Caporellas in their 1976 and 1977 returns. The disallowance for 1976 resulted in (a) a reduction of the net operating loss carryback from 1976 to 1973 and (b) an increase in the amount of averageable income used to compute the Caporellas' 1974 tax which resulted in an increase in tax for 1974. The disallowance did not result in a deficiency for 1976.

Petitioners contend that the fourth Form 5214 was a restricted consent which precluded respondent from disallowing the losses from the two movie tax shelters or, alternatively, that it did not validly extend the period of limitations on assessment for 1976 beyond December 31, 1980 (the date provided for in the Form 872 executed by petitioners in March, 1980).

## OPINION

Section 6501(a) sets forth the general rule that a deficiency must be assessed within 3 years following the filing of the return.[8] The 3-year period for assessment may, however, be extended by agreement before the expiration of that period as prescribed by section 6501(c)(4).[9]

The deficiencies at issue herein are for petitioners' 1973 and 1974 taxable years and are attributable to a net operating loss carryback from the taxable year 1976. Section 6501(h) provides a special rule for determining the applicable assessment period with respect to deficiencies attributable to carrybacks:

---

[8]Sec. 6501(a) provides as follows:

SEC. 650(a). GENERAL RULE.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed), or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

[9]Sec. 6501(c)(4) reads as follows:

(4) EXTENSION BY AGREEMENT.—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

In the case of a deficiency attributable to the application to the taxpayer of a net operating loss carryback or a capital loss carryback (including deficiencies which may be assessed pursuant to the provisions of section 6213(b)(3)), such deficiency may be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the net operating loss or net capital loss which results in such carryback may be assessed.

Thus, the determination as to whether the 1973 and 1974 deficiencies are time-barred depends upon whether the period for assessing a deficiency for 1976 expired prior to December 14, 1982, the date on which the statutory notice of deficiency was issued.

The timeliness of the notice of deficiency depends upon a chain of consents which purport to extend the period of limitations on assessment for 1976 until December 31, 1982. The first and second Forms 5214 extended the period of limitations for 1971 through 1977 until December 31, 1979. However, by the express terms of those consents, the consents had no practical effect with regard to 1976 and 1977, as the normal expiration period for each of those years would extend beyond December 31, 1979. At the end of 1979, petitioners executed a third Form 5214, which was intended to extend the period of limitations for 1971 through 1977 until December 31, 1980. This consent, however, was not timely signed by respondent. In March 1980, a Form 872 was executed which extended the assessment period for 1976 from April 15, 1980 to December 31, 1980. In October 1980, a fourth Form 5214 was executed which purported to extend the assessment period for 1971 through 1977 to December 31, 1982.

Respondent relies on the Form 872 executed in March 1980, and the fourth Form 5214 executed in October 1980, to keep open the period of limitations for assessing deficiencies for 1976 until December 31, 1982.

Petitioners contend that the period for assessing a deficiency for 1976 expired prior to the date the notice of deficiency was issued. They muster a number of arguments that assail either the validity of the fourth Form 5214 or, alternatively, its scope. For the reasons discussed *infra*, we hold that the fourth Form 5214 constitutes a valid, general consent which extended the period of limitations for asses-

sing deficiencies in petitioners' 1976 income until December 31, 1982.

Petitioners contend first that the fourth Form 5214, which was executed after the amendment to section 183(e) by the Tax Reform Act of 1976, should be treated either as a nullity or as a consent restricted solely to determining whether the presumption under section 183(d) is available. We do not accept petitioners' contention.

Section 183(e)[10] was added to the Code by the Revenue Act of 1971, Pub. L. 92-178, sec. 311, 85 Stat. 525, to ensure that a taxpayer who embarks on a new activity is allowed the full benefit of the presumption, provided in section 183(d),[11] that an activity such as horse breeding is engaged in for profit if there is a profit in 2 out of 7 consecutive years. The Senate Finance Committee described the purpose and operation of the amendment as follows:

Under present law, a taxpayer is presumed to be engaged in an activity for profit for the current taxable year, unless established to the contrary by the Secretary of the Treasury or his delegate, if in two or more years of the period of five consecutive taxable years (seven consecutive years in the case of an activity which consists in major part of the breeding,

---

[10]Sec. 183(e), as originally enacted by sec. 311(a) of Pub. L. 92-178, reads as follows:

SEC. 183(e). SPECIAL RULE.—

(1) IN GENERAL.—A determination as to whether the presumption provided by subsection (d) applies with respect to any activity shall, if the taxpayer so elects, not be made before the close of the fourth taxable year (sixth taxable year, in the case of an activity described in the last sentence of such subsection) following the taxable year in which the taxpayer first engaged in the activity. For purposes of the preceding sentence, a taxpayer shall be treated as not having engaged in an activity during any taxable year beginning before January 1, 1970.

(2) INITIAL PERIOD.—If the taxpayer makes an election under paragraph (1), the presumption provided by subsection (d) shall apply to each taxable year in the 5-taxable year (or 7-taxable year) period beginning with the taxable year in which the taxpayer first engaged in the activity, if the gross income derived from the activity for 2 or more of the taxable years in such period exceeds the deductions attributable to the activity (determined without regard to whether or not the activity is engaged in for profit).

(3) ELECTION.—An election under paragraph (1) shall be made at such time and manner, and subject to such terms and conditions, as the Secretary or his delegate may prescribe.

[11]Sec. 183(d) provides as follows:

SEC. 183(d). PRESUMPTION.—If the gross income derived from an activity for 2 or more of the taxable years in the period of 5 consecutive taxable years which ends with the taxable year exceeds the deductions attributable to such activity (determined without regard to whether or not such activity is engaged in for profit), then, unless the Secretary or his delegate establishes to the contrary, such activity shall be presumed for purposes of this chapter for such taxable year to be an activity engaged in for profit. In the case of an activity which consists in major part of the breeding, training, showing, or racing of horses, the preceding sentence shall be applied by substituting the period of 7 consecutive taxable years for the period of 5 consecutive taxable years.

training, showing, or racing of horses) ending with the current taxable year, the activity was carried on at a profit (i.e., if the gross income from the activity exceeds the deductions attributable to the activity which would be allowed if it were engaged in for profit). For purposes of this presumption, all deductions attributable to the activity other than that allowed for net operating loss carryover are taken into account.

It has come to the attention of the committee that if the period ending with the current taxable year does not include any taxable year in which a profit was made, the taxpayer is not being allowed to use the presumption even though there are, at that time, not 5 consecutive years (or 7 years in the case of horses) in which to measure the presumption. The committee believes that this interpretation does not reflect the intent of Congress in originally adopting this provision. As a result, the committee's bill provides that a taxpayer may elect to suspend the application of the presumption until there are 5 consecutive taxable years (or 7 years in the case of horses) in existence from the time the taxpayer first engaged in the activity and then to apply it to any years in the 5 year period (7 years in the case of horses). For this purpose, a taxpayer is not to be treated as having engaged in an activity covered by this provision for any taxable year beginning before 1970.

The committee is aware that because of the 5- or 7-year periods involved in the case of the presumption, the statute of limitations may run before any action could otherwise be taken under the provision added by the committee. For this reason, the committee believes that this provision should not generally be applicable unless the taxpayer executes a waiver of the statute of limitations for the 5- or 7-year period and for a reasonable time thereafter. This will allow the taxpayer time to claim any refunds of tax paid during this period and also will allow the Internal Revenue Service to assess any deficiencies.

This provision is to be effective with respect to taxable years beginning after December 31, 1969.

[S. Rept. 92-437 (1971), 1972-1 C.B. 559, 600.]

Pursuant to his authority under section 183(e)(3), respondent promulgated Temporary Income Tax Regulation section 12.9, which prescribed the time and manner for making the section 183(e) election. Temporary Regulation section 12.9 provided, in relevant part, as follows:

(d) Manner of making election.

\* \* \* \* \* \* \*

(2) For an election to be effective, there must be attached to the statement properly executed consents, in the form prescribed by the Commissioner, extending the period prescribed by section 6501 for the assessment of *any tax* to a date which is not earlier than 18 months after the due date of the return (determined without extensions) for the final year in the presumption period to which the election applies, as follows:

(i) Consents for each of the taxpayer's taxable years in the presumption period to which the election applies, * * *

[Temporary Income Tax Regs. sec. 12.9, T.D. 7308, 1974-1 C.B. 64, 66. Emphasis added.]

Accordingly, Form 5214, as developed by respondent in 1975, was used for the above-stated purpose. Its application was general, i.e., it extended the period of limitation for all items in the taxable years to which the consent applied.

Perceiving problems with the general application of the waivers used by respondent under section 183(e), Congress in 1976 amended section 183(e) to provide that where a taxpayer makes the election thereunder, the period of limitations shall automatically remain open until 2 years after the date prescribed by law for filing the return for the last taxable year in the presumption period for the assessment of "any deficiency attributable to such activity." The committee reports explain the reason for the change as follows:

In order to accomplish the purposes which Congress sought when it enacted the look-forward presumption of section 183(e), it is not necessary to keep the statute of limitations open for all issues on the taxpayer's return during the 5 (or 7) year period. The only issues on which the statute of limitations needs to remain open concern the deductions which will be tested as to whether they are incurred in an activity which the taxpayer engaged in for profit. The committee believes that a taxpayer should be able to take full advantage of a statutory presumption which was intended for his benefit, without unnecessarily extending the statute of limitations for items on his return which are unrelated to deductions which might be disallowed under section 183. [S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 105-106.]

Section 214(c) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1549, provided the following effective date for the amendment to section 183(e):

(c) EFFECTIVE DATE.—The amendments made by this section shall apply with respect to taxable years beginning after December 31, 1969; except that such amendments shall not apply to any taxable year ending before the date of the enactment of this Act with respect to which the period for assessing a deficiency has expired before such date of enactment.

The General Explanation of the Tax Reform Act of 1976 prepared by the Staff of the Joint Committee on Taxation

(1976-3 C.B. (Vol. 2) 73) states that the amendment was not intended to affect either the scope or duration of any general waivers that were executed prior to October 4, 1976. A footnote to the General Explanation explains the operation of the amendment in connection with an existing general waiver as follows:

> The provision is not designed to affect existing general waivers of the statute of limitations, because to do so would allow taxpayers who have previously signed such waivers to escape an examination of issues not related to section 183 even though the Internal Revenue Service had attempted to make a timely audit of them. Thus, for example if, before the date of enactment of this bill, in examining a taxpayer's income tax returns for 1970, a revenue agent had proposed adjustments to a taxpayer's allegedly unsubstantiated charitable contributions and to his horse breeding activities, and if the taxpayer made an election under section 183(e), and signed a general waiver of the statute of limitations until October 15, 1978 (i.e., until 18 months after the due date of his 1976 return), the agent could issue the taxpayer a deficiency notice for both items at any time prior to that date. After that date, however, the statute of limitations would continue to be open for issues relating to horse breeding activities conducted in 1970 until April 15, 1979, but would be closed for issues relating to the proper substantiation of charitable contributions after October 15, 1978. [1976-3 C.B. (Vol. 2) 73 n. 34.]

The General Explanation also provides:

> Similarly, the bill does not affect general waivers of the statute of limitations which may be signed after enactment, since in order to avoid two controversies relating to overall income tax liability for the same year, a taxpayer may wish to postpone non-section 183 issues until the information relating to the section 183 presumption is available. [1976-3 C.B. (Vol. 2) 74.]

Petitioners maintain that because the fourth Form 5214 was signed after the enactment of the Tax Reform Act of 1976 it should be treated as a nullity "because it was in conflict with the language and intent of revised Section 183." We fail to find any such conflict. Section 183(e)(4) clearly has no effect, and was not intended to have any effect, upon written consents to extend the period of limitations, whether executed before or after the date of enactment of the Tax Reform Act of 1976.

Petitioners further argue that since the fourth Form 5214 was executed after the enactment of the Tax Reform Act of

1976 it should be restricted solely for purposes of determining the availability of the section 183(d) presumption "in order to fulfill Congressional intent."[12] Without question, the intent of Congress in amending section 183(e) was to automatically extend the period of limitations on assessment of deficiencies arising from "hobby losses" when a taxpayer elects a postponement of a profit determination. Nothing in the statute, however, restricts the rights of the parties to consent to extend the time for assessment with respect to any other items, or for that matter, to extend the period of limitations on assessment of hobby losses beyond the 2-year period prescribed by the statute. A taxpayer may not by simply filing Form 5213 circumvent the operation of validly executed extensions of the period of limitations on assessment.

Having decided that the 1976 amendment to section 183(e) had no effect upon the fourth Form 5214, we turn to the other arguments advanced by petitioners.

Petitioners invite us to nullify or modify the unrestricted consensual extension of the period of limitations that is otherwise unambiguously expressed in Form 5214, and advance as alternative grounds for our doing so (1) fraudulent misrepresentation on respondent's behalf and (2) mutual mistake by the parties.

Assuming, without deciding, that fraudulent misrepresentation is a proper basis for us to look beyond the plain language of a waiver of the period of limitations on assessment, petitioners have not produced adequate evidence of any misrepresentation on respondent's part.[13] We are unimpressed by petitioners' claim that the failure of respondent's employees to advise Mr. Radler that Form 5214 constituted an unrestricted waiver, prior to its execution, must be considered misrepresentation.[14]

---

[12]Petitioners cite as authority for this argument footnote 34 to the Joint Committee's General Explanation, quoted in the text of this opinion *suprali*. Clearly, footnote 34 does not support petitioners' position, and petitioners' reading of the footnote contradicts the unequivocal statement in the General Explanation that the amendment would have no effect on the post-enactment general written consents. 1976-3 C.B. (Vol. 2) 74.

[13]If there was any trickery involved herein, it apparently was on the part of Mr. Radler when he requested an extension of time beyond Dec. 31, 1980, to respond to the "30-day letter." By making such a request, Mr. Radler knew, or should have known, that if the request was granted (which it was) respondent would not issue a notice of deficiency on or before Dec. 31, 1980, the expiration date established by Form 872.

[14]On brief, petitioners seek to characterize respondent's employees' silence as misrepresenta-

Petitioners claim that because Form 5214 bears the instruction "Use this form only if you are filing Form 5213" beneath its caption, which states, in bold black letters, "Consent Extending Period of Limitations for Assessment of Income Tax," the form is misleading. We do not agree.

The fourth Form 5214 states that petitioners and respondent agree as follows:

That the amount(s) of *any Federal income tax* due under any return(s) made by or on behalf of the above-named taxpayers for the taxable years ended December 31, 1971, 1972, 1973, 1974, 1975, 1976, 1977, under the Internal Revenue Code of 1954, may be assessed at any time on or before December 31, 1982, except that if a notice of deficiency in tax for any such year(s) is sent to the taxpayer(s) on or before that date, then the time for making any assessment therefor shall be further extended for the period in which the making of an assessment is prohibited and for sixty days thereafter. [Emphasis added.]

We find no material difference between the operative language of Form 5214 and that of Form 872, which is also a general consent. Nor do we find anything in the printed provisions on the face of Form 5214, or in the instructions on the back of the form, that states the consent was limited to deficiencies which might arise under section 183.

We think it is clear that Form 5214 was developed to facilitate the making of the general written consent required under the pre-1976 version of section 183(e). The then-existing general consent (Form 872) did not provide guidance as to the determination of the taxable years and extension period to be covered by the consent. We do not doubt that the general written consent requirement of the pre-1976 version of section 183(e) could have been satisfied by use of a Form 872 as well as a Form 5214; however neither the existence of Form 872 nor the subsequent statutory enactments deprive Form 5214 of its validity. The instruction that Form 5214 is to be used with Form 5213 is not, in our view, misleading nor does it in any way limit the

---

tion by arguing that Agent Goldman's supervisor, Almira Kinickey, authorized the use of the Form 5214 even though, petitioners claim, she knew that Form 5214 was an unrestricted waiver and that she had been advised that petitioners wanted a restricted waiver. Petitioners did not call Almira Kinickey as a witness, or introduce any credible evidence as to Almira Kinickey's understanding of what petitioners wanted or as to her understanding of the effect of a Form 5214.

scope of what was clearly designed to be an unrestricted waiver.[15]

We are equally unimpressed by petitioners' contention that the Form 5214 should be nullified or modified on the grounds of mutual mistake. In our view, the only mistake here was a unilateral mistake of law on the part of petitioners, which was not induced in any way by respondent. This is not the type of mistake that might, in a proper case, warrant relief. See 13 Williston on Contracts, secs. 1579-1587 (3d ed.).

Finally, petitioners claim that there is no valid authority or delegation of authority for Group Manager Grieper to sign a Form 5214. Suffice it to say, Group Manager Grieper had the authority "to sign *all* consents fixing the periods of limitations on assessment or collection" under Delegation Order No. 42 (Rev. 11), 1979-1 C.B. 474 (emphasis added). The delegation order does not specify what forms may be used, which is consistent with the rule that an otherwise valid waiver agreement need not be executed upon a particular form nor even embodied in one writing. 1 L. Casey, Fed. Tax Practice, sec. 5.56 (1977 rev.); *R.H. Stearns Co. v. United States*, 291 U.S. 54 (1934); *Shambaugh v. Scofield*, 132 F.2d 345 (5th Cir. 1942); *Sabin v. United States*, 70 Ct. Cl. 574, 44 F.2d 70 (1930).

Based on the above, we hold that the adjustments made by respondent to the Caporellas' 1976 return are not time-barred; hence, the period of limitations for assessing deficiencies for the years 1973 and 1974 arising from net operating loss carrybacks had not expired prior to the date on which the notice of deficiency was issued.

Accordingly,

*Decision will be entered for the respondent.*

---

[15]The Caporellas filed a Form 5213 in March 1975. The filing of additional Forms 5213 (the purpose of which is to make an election) with the second, third, and fourth Forms 5214 would have served no useful purpose.