T.C. Memo. 2011-162

UNITED STATES TAX COURT

TREE-TECH, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11781-09L.                    Filed July 11, 2011.

Julie Moon (an officer) and William P. Moon III (specially
recognized), for petitioner.

Matthew S. Reddington, for respondent.

MEMORANDUM OPINION

WELLS, Judge: This case is before the Court on respondent's
motion for summary judgment pursuant to Rule 121.[1] Respondent

---

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code of 1986, as amended, and Rule references
are to the Tax Court Rules of Practice and Procedure.

issued to petitioner a notice of determination concerning collection action. We must decide: (1) Whether petitioner may challenge its underlying employment tax liability despite having signed a closing agreement; (2) whether petitioner may raise its claim for section 530 relief[2] before this Court; and (3) whether respondent's determination to proceed with collection was an abuse of discretion.

## Background

The facts set forth below are based upon examination of the pleadings, moving papers, responses, and attachments filed in the instant case.

Petitioner's principal place of business is in Hurt, Virginia. Petitioner's sole officer and director is Julie Moon (Mrs. Moon), but for the most part the business is run by Mrs. Moon's husband, William Moon (Mr. Moon), who also serves as its attorney-in-fact pursuant to a power of attorney.

On February 1, 2007, respondent sent a letter notifying petitioner that respondent was conducting an employment tax examination for petitioner's 2004, 2005, and 2006 tax years. Initially, respondent's examination focused on petitioner's failure to report officer's compensation as wages, but after his first meeting with Mr. and Mrs. Moon, respondent's examiner,

---

[2]Sec. 530 relief refers to the "safe harbor" relief available under the Revenue Act of 1978, Pub. L. 95-600, sec. 530, 92 Stat. 2885, as amended.

William Cookenour (Mr. Cookenour), expanded his examination to include petitioner's classification of its workers.

Mr. Cookenour first met with Mr. and Mrs. Moon on February 16, 2007, regarding the examination of petitioner's returns for its 2004, 2005, and 2006 tax years. At that meeting Mr. Cookenour discussed only the officer compensation issue and did not mention worker classification. After the meeting Mr. Cookenour apparently did further research on worker classification and determined that there was a reclassification issue. Petitioner had classified its workers as independent contractors, but Mr. Cookenour determined that they should have been classified as employees.

During the following months Mr. Cookenour had several more conversations with Mr. Moon during which they discussed whether petitioner was entitled to section 530 relief. Mr. Moon contended that petitioner was entitled to such relief, but after some research Mr. Cookenour determined that it was not. On July 6, 2007, after making his determination regarding section 530 relief, Mr. Cookenour again met with petitioner's representatives and offered to discuss settlement under the Classification Settlement Program.

On October 10, 2007, Mr. Cookenour met with Mr. and Mrs. Moon to explain the terms of respondent's offer under the Classification Settlement Program. Petitioner contends that at

the meeting Mr. Cookenour presented Mr. and Mrs. Moon with two different calculations of petitioner's liabilities and told them that if they did not accept the offer to settle for the lower amount, the Internal Revenue Service (IRS) would assess the higher amount. Petitioner contends that Mr. Cookenour told Mr. and Mrs. Moon that they could appeal the assessment but that they would not win on appeal. Mrs. Moon accepted the settlement offer at that meeting by signing a closing agreement titled "Closing Agreement on Final Determination Covering Specific Matters Regarding Worker Classification" (closing agreement). In the closing agreement, petitioner agreed to pay the amount shown on the agreement in full satisfaction of its liability stemming from its worker classification, and it agreed to begin treating its workers as employees. The closing agreement reclassified petitioner's workers only for 2004, leaving its classification of workers for 2005 and 2006 untouched, and it granted petitioner relief of 75 percent of its liability relating to worker classification for 2004.

Petitioner concurrently signed a Form 2504, Agreement to Assessment and Collection of Additional Tax and Acceptance of Overassessment. The Form 2504 covered not only petitioner's liability with regard to worker classification but also petitioner's liability for its failure to report officer's compensation.

Respondent has not agreed to petitioner's account of the meeting on October 10, 2007. Nevertheless, respondent contends that even if the facts are as petitioner alleges, respondent is still entitled to summary judgment because petitioner has not alleged facts that amount to duress.

The closing agreement signed by Mrs. Moon contained an incorrect Employer Identification Number (EIN) in the document heading. Petitioner's correct EIN ends with a 7, but the EIN listed in the document heading of the closing agreement substituted a 9 for the 7. However, the closing agreement did contain the correct EIN in the first paragraph and it identified petitioner by name as "Tree Tech Incorporated".

On September 18, 2008, respondent mailed petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing (notice of intent to levy). Petitioner timely filed Form 12153, Request for a Collection Due Process or Equivalent Hearing. Throughout its correspondence with respondent's Appeals Office, petitioner did not raise any collection alternatives but contended that the closing agreement contained the incorrect EIN and was therefore invalid and that Mr. Cookenour had coerced Mrs. Moon into signing the closing agreement. Petitioner contested its underlying liability, arguing that it was entitled to section 530 relief on the worker classification issue. The Appeals Office determined that petitioner could not raise its underlying

tax liability during the collection due process hearing because the assessments were made in accordance with the closing agreement signed by Mrs. Moon. On April 21, 2009, respondent's Appeals Office issued petitioner the Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, sustaining the notice of intent to levy.

Petitioner timely filed its petition.[3] On its petition, petitioner checked the boxes indicating that it was disputing respondent's notice of determination concerning collection action and respondent's notice of determination concerning worker classification. However, petitioner was never issued a notice of determination concerning worker classification.

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials and may be granted where there is no genuine issue of material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b); Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The moving party bears the burden of proving that there is no genuine issue of

---

[3]The original petition was signed only by Mr. Moon, but because Mr. Moon is not an officer of petitioner, it is unclear whether Mr. Moon had the capacity to sign on behalf of petitioner. See Rules 24(b), 60(c). However, Mrs. Moon has since ratified the petition. Such a ratification relates back to the date of the original petition. See Mont. Sapphire Associates, Ltd. v. Commissioner, 95 T.C. 477, 482-484 (1990); Carstenson v. Commissioner, 57 T.C. 542, 545-546 (1972).

material fact, and factual inferences are viewed in a light most favorable to the nonmoving party.  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  However, the party opposing summary judgment must set forth specific facts that show a genuine issue of material fact exists and may not rely merely on allegations or denials in the pleadings.  Rule 121(d).

The Commissioner may collect a tax by levy upon the property of the taxpayer liable therefor if the taxpayer neglects or refuses to pay the tax liability within 10 days after notice and demand for payment.  Sec. 6331(a).  The Commissioner generally must provide the taxpayer written notice of the right to a hearing before the levy is made.  Sec. 6330(a).  Upon a timely request, the taxpayer is entitled to an administrative hearing before an impartial officer or employee of the Appeals Office. Sec. 6330(b).  Following the hearing, the Appeals officer must determine whether the collection action is to proceed, taking into account the verification the Appeals officer has made, the issues raised by the taxpayer at the hearing, and whether the collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary.  Sec. 6330(c)(3).  We have jurisdiction to review the determination if we have jurisdiction over the type of tax involved in the case.

Sec. 6330(d)(1); Iannone v. Commissioner, 122 T.C. 287, 290 (2004).

Where the validity of the underlying tax liability is properly in issue, we review the matter on a de novo basis. Sego v. Commissioner, 114 T.C. 604, 610 (2000). However, where the validity of the underlying liability is not properly in issue, we review the determination of the Appeals Office for abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 182 (2000).

The taxpayer may challenge the existence or amount of the underlying tax liability only if the taxpayer did not receive a notice of deficiency or did not otherwise have an opportunity to challenge the underlying liability. Sec. 6330(c)(2)(B). The taxpayer may waive the right to challenge the underlying liability by consenting to the assessment of a proposed liability. See Aquirre v. Commissioner, 117 T.C. 324, 327 (2001); A-Z Optics, Inc. v. Commissioner, T.C. Memo. 2007-27; Deutsch v. Commissioner, T.C. Memo. 2006-27, affd. 478 F.3d 450 (2d Cir. 2007). Section 7121 authorizes the Commissioner to enter into a written "closing agreement" with a taxpayer relating to the liability of such person for any taxable period; it provides that if such agreement is approved by the Commissioner or his delegate, it will be final and conclusive. Hudock v. Commissioner, 65 T.C. 351, 362 (1975). Closing agreements may be reopened only in exceptional circumstances such as fraud,

malfeasance, or the misrepresentation of a material fact.  Sec.
7121(b).  The party seeking to set aside the closing agreement
bears the burden of proving fraud, malfeasance, or
misrepresentation.  Brinkman v. Commissioner, T.C. Memo.
1989-217.  Some closing agreements constitute a final
determination of the taxpayer's liability for the years in issue,
but others decide only specific issues and bind the parties only
as to those issues.  Manko v. Commissioner, 126 T.C. 195, 201-202
(2006); Estate of Magarian v. Commissioner, 97 T.C. 1, 5 (1991);
Zaentz v. Commissioner, 90 T.C. 753, 760-761 (1988).

Petitioner attempts to contest its underlying liability with
regard to worker classification before this Court, asserting that
it is eligible for section 530 relief.  Because petitioner did
not receive a notice of deficiency or otherwise have the
opportunity to dispute its tax liability, it would generally be
permitted to challenge its underlying liability as part of the
collection due process hearing.  See sec. 6330(c)(2)(B).
However, a taxpayer may also waive its opportunity to challenge
its underlying tax liability if it enters into a binding closing
agreement with the Commissioner that covers that issue or
consents to the liability's immediate assessment and collection.
See Aguirre v. Commissioner, supra at 327.

Respondent contends that petitioner waived its right to
challenge its underlying liability, including the issue of

whether it is entitled to section 530 relief, because it signed a closing agreement consenting to respondent's determination regarding worker classification. Petitioner contends that the closing agreement was invalid and should be set aside because Mrs. Moon signed it under duress and because it contains the incorrect EIN.

We will first consider whether the closing agreement is valid or whether it should be set aside. Section 301.7121-1(d), Proced. & Admin. Regs., establishes the procedure to be used with respect to closing agreements, and it provides that all closing agreements shall be executed on forms prescribed by the IRS. See Hudock v. Commissioner, supra at 362. The closing agreement signed by Mrs. Moon complies with the procedures established and is executed on the form prescribed. See Internal Revenue Manual (IRM) pt. 4.23.6.14.3 (Mar. 1, 2003). The closing agreement signed by Mrs. Moon states in bold letters: "This agreement is final and conclusive except" in the event of fraud, malfeasance, or misrepresentation of material fact. The closing agreement settles the worker classification issue, providing that petitioner will pay the amount shown in full discharge of its employment tax liability relating to worker classification and that it will begin treating its workers as employees.

Petitioner contends that the closing agreement is invalid and should be set aside because Mrs. Moon was coerced into

signing it and because it shows an incorrect EIN in the document heading.  Petitioner's support for its coercion argument consists of its contention that Mr. Cookenour offered Mrs. Moon two different calculations of liabilities and proposed that the IRS would assess the lower one if she accepted the closing agreement. Yet Mr. Cookenour's offer is precisely the kind of arrangement contemplated under respondent's Classification Settlement Program.  See id. pt. 4.23.6.13.1.  Indeed, the very nature of a settlement is that one party offers the other party a concession to induce that party to agree to a matter.  Respondent agreed to assess only a portion of the taxes due under the reclassification in exchange for petitioner's agreement to settle the matter.

Section 7121(b) provides that a closing agreement shall be final "except upon a showing of fraud or malfeasance, or misrepresentation of a material fact".  We understand petitioner to be contending that duress would be the kind of "malfeasance" that would require the closing agreement to be set aside under section 7121(b).  However, the facts petitioner has alleged do not amount to duress.  Petitioner has not set forth any specific facts that would create a genuine issue for trial as to fraud, malfeasance, or misrepresentation of a material fact. Accordingly, we conclude as a matter of law that there was no fraud, malfeasance, or misrepresentation of a material fact.

Petitioner also contends that the closing agreement should be invalid because of a minor error in the EIN. While it is uncontested that the EIN listed in the heading of the closing agreement is off by one digit, petitioner was in no way prejudiced or confused by the minor error.[4] Accordingly, we hold that the closing agreement is valid despite the incorrect EIN in the document heading.

We therefore hold that the closing agreement shall not be set aside. Respondent contends that if we conclude the closing agreement is valid, petitioner is precluded from raising its claim for section 530 relief. However, respondent's contention appears inconsistent with the position taken by the Commissioner in Rev. Proc. 85-18, 1985-1 C.B. 518, which states:

> Relief under section 530(a)(1) of the Act is available to taxpayers who are under audit by the Service or who are involved in administrative (including Appellate) or judicial processes with respect to assessments based on employment status reclassifications. Relief also is extended to any claim for a refund or credit of any overpayment of an employment tax resulting from the termination of liability under section 530(a)(1), provided the claim is not barred on the date of enactment of this provision (November 6, 1978) by any law or rule of law.

---

[4]We have repeatedly held that minor errors will not invalidate notices of deficiency where taxpayers were not prejudiced. See, e.g., Estate of McElroy v. Commissioner, 82 T.C. 509, 514 n.4 (1984) (misspelling of street name and incorrect digit in ZIP Code did not invalidate notice of deficiency where it did not prejudicially delay receipt); Clodfelter v. Commissioner, 57 T.C. 102, 107 (1971) (incorrect street number did not invalidate notice of deficiency actually received by taxpayer), affd. 527 F.2d 754 (9th Cir. 1975).

> Taxpayers who have entered into final closing agreements under section 7121 of the Code or compromises under section 7122 with respect to employment status controversies are ineligible for relief under the Act, unless they have not completely paid their liability. Thus, for example, a taxpayer who has agreed to or compromised a liability for an amount which is to be paid in installments, but who still has one or more installments to pay, is relieved of liability for such outstanding installments.

Pursuant to that revenue ruling, which is taken almost verbatim from the legislative history of section 530,[5] it would appear that a taxpayer who has entered into a final closing agreement with the Commissioner pursuant to section 7121 may nonetheless be entitled to section 530 relief as long as the taxpayer has not completely paid off its tax liability.

However, we need not decide whether Rev. Rul. 85-18, supra, entitles petitioner to relief under section 530 because we conclude that we lack jurisdiction to consider petitioner's claim for section 530 relief. The Tax Court is a court of limited jurisdiction and may exercise jurisdiction only to the extent authorized by Congress. Sec. 7442; Naftel v. Commissioner, 85

---

[5]See H. Rept. 95-1748, at 6 (1978), 1978-3 C.B. (Vol. 1) 629, 634, which states:

> Taxpayers who have entered into final closing agreements under Code section 7121 or compromises under section 7122 with respect to employment status controversies are ineligible for relief under the bill, unless they have not completely paid their liability. Thus, for example, a taxpayer who has agreed or compromised a liability for an amount which is to be paid in installments, but who still has one or more installments to pay, is relieved of liability for such outstanding installments. * * *

T.C. 527, 529 (1985).  We have jurisdiction under section 7436(a) to decide whether a taxpayer is entitled to section 530 relief. Charlotte's Office Boutique, Inc. v. Commissioner, 121 T.C. 89, 103 (2003), affd. 425 F.3d 1203 (9th Cir. 2005).  However, our jurisdiction under section 7436(a) is dependent upon the Commissioner's issuance of a notice of determination concerning worker classification.  Id.; Neely v. Commissioner, 115 T.C. 287, 290 (2000).

Petitioner indicated in its petition that it was contesting respondent's notice of determination concerning collection action and notice of determination concerning worker classification. However, because petitioner signed a closing agreement, respondent never issued petitioner a notice of determination concerning worker classification.  By signing the closing agreement, petitioner chose not to receive such a notice and therefore waived its opportunity to challenge its underlying liability regarding worker classification before this Court.  See Aquirre v. Commissioner, 117 T.C. at 327 (holding that where a taxpayer signed a Form 4549, Income Tax Examination Changes, consenting to an immediate assessment and collection of tax, the taxpayer chose not to receive a notice of deficiency and thereby waived the taxpayer's right to challenge its underlying liability in this Court).  Accordingly, we hold that we lack jurisdiction to consider petitioner's request for section 530 relief.  See

Charlotte's Office Boutique, Inc. v. Commissioner, supra at 103; Aguirre v. Commissioner, supra at 327.

Consequently, because, as a matter of law, petitioner has not alleged facts that would allow the closing agreement to be set aside and because we otherwise lack jurisdiction to consider petitioner's claim for section 530 relief, petitioner may not challenge its underlying liability regarding worker classification before this Court.

Finally, we consider whether respondent's Appeals Office abused its discretion by sustaining the collection action. Because petitioner's underlying tax liability is not properly in issue, we review the determination of respondent's Appeals Office for abuse of discretion. See Sego v. Commissioner, 114 T.C. at 610. The settlement officer considered all of petitioner's contentions, verified compliance by the IRS with all applicable laws and regulations, and considered whether the proposed collection actions balanced the need for efficient tax collection with petitioner's concern that they be no more intrusive than necessary. On the basis of the record before us, we hold that the settlement officer did not abuse her discretion in sustaining the notice of intent to levy.

We conclude that respondent is entitled to summary judgment on the issues of whether the closing agreement should be set aside to allow petitioner to challenge its underlying employment

tax liability and whether respondent's Appeals Office abused its discretion in determining that respondent may proceed with collection.  We shall therefore grant respondent summary judgment on those issues.  Additionally, we conclude that we lack jurisdiction to consider petitioner's claim that it is entitled to section 530 relief, and we shall therefore dismiss petitioner's case with respect to that claim.

In reaching these holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order and decision will be entered for respondent</u>.