T.C. Memo. 2014-157

UNITED STATES TAX COURT

WHISTLEBLOWER 22231-12W, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22231-12W.                    Filed August 4, 2014.

<u>Robert F. Katzberg</u>, for petitioner.

<u>Charles J. Butler</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  This whistleblower award case is before the Court on a motion by the Internal Revenue Service (IRS or respondent) to dismiss for lack of jurisdiction.  Petitioner received several emails from the IRS Whistleblower Office (Office) that petitioner asserts constitute a determination regarding one of his

[*2] claims.[1]   The issue we must decide is whether the IRS made a "determination regarding an award" within the meaning of section 7623(b)(4) sufficient to confer jurisdiction on this Court.[2]

FINDINGS OF FACT

These findings of fact are based on the parties' pleadings, a stipulation of facts with accompanying exhibits, and an evidentiary hearing.  At the hearing the Court received testimony from Stephen Whitlock, Director of the Office.  He testified about the Office's procedures for processing claims generally and about its handling of the particular claim at issue here.  We found his testimony instructive and credible in all respects.

Petitioner filed Form 211, Application for Award for Original Information, with the Office in November 2010.  On the application petitioner asserted that he was cooperating with the Department of Justice and the IRS Criminal Investiga-

---

[1]The Court granted petitioner's motion to proceed anonymously in this case. In an effort to preserve petitioner's anonymity, the parties in their briefs and other filings refer to the U.S. taxpayer who is the subject of the relevant whistleblower claim as "Taxpayer 1."  We will employ the same convention in this opinion. When referring to Taxpayer 1 and to petitioner, we will employ the masculine pronoun and possessive adjective without intending to create any implication concerning the gender of either person.

[2]All statutory references are to the Internal Revenue Code in effect at the relevant times.  All dollar amounts are rounded to the nearest dollar.

[*3] tion Division in connection with the ongoing investigation of two Swiss bankers.  Petitioner alleged that his cooperation with those agencies had led to, and would lead to more, information about these bankers' involvement in tax evasion by U.S. persons having undeclared offshore financial accounts.

On December 1, 2010, the Office notified petitioner that it had received the Form 211 and assigned unique claim numbers to his claims regarding the two Swiss bankers.[3]  The Office advised petitioner that if it initiated an investigation as a result of the information, final resolution of his claims could take several years.  No award could be paid until the IRS had collected any taxes or other amounts assessed by virtue of the information petitioner had supplied.

Subsequent communications (letters, emails, and phone calls) ensued between Cindy Stuart, the Office analyst assigned to petitioner's claims, and petitioner's counsel.  Petitioner's counsel tried to convince Ms. Stuart and the Office that petitioner's cooperation was the linchpin in the prosecution of the two Swiss bankers, which allegedly led to the Government's receiving incriminating information about numerous U.S. taxpayers.

---

[3]The Office subsequently informed petitioner that "the claim number assignment is strictly for control purposes * * * and no inference should be drawn of the applicability of any award payment."

[*4]   On August 23, 2011, petitioner filed with the Office a third claim for an award, which is the subject of the present controversy.  Petitioner filed this claim after learning that Taxpayer 1 had agreed to pay a substantial penalty in conjunction with a guilty plea for filing a false tax return.  Taxpayer 1 admitted that one of the Swiss bankers had helped him open Swiss bank accounts to conceal his income and assets from U.S. authorities.  By the guilty plea, Taxpayer 1 agreed to pay a multimillion-dollar civil penalty for failing to file Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts (FBAR).  See 31 U.S.C. sec. 5321(a) (2006).  Taxpayer 1 also agreed to pay the IRS a relatively small amount of restitution, reflecting unpaid Federal income tax due on income earned from the Swiss bank accounts.  Petitioner claimed entitlement to an award based upon the aggregate amount paid by Taxpayer 1, given petitioner's alleged involvement in the Swiss banker's arrest, which led to Taxpayer 1's arrest.  On January 11, 2012, the Office assigned this claim a unique claim number ending in 67 (Taxpayer 1 claim).

On January 26, 2012, petitioner's counsel sent Ms. Stuart a detailed memorandum outlining petitioner's asserted connection with Taxpayer 1 and urging that an award for the Taxpayer 1 claim be finalized without delay.  On January 31 Ms. Stuart mailed petitioner's counsel a letter confirming receipt of the January 26

**[*5]** letter. She informed him that "[t]he claim for award under Section 7623 is still open and under active consideration" and that "a number of actions * * * must be completed before a determination is made."

Petitioner's counsel sent Ms. Stuart a number of follow-up letters between February and June 2012. In her replies Ms. Stuart stated that the Office had not yet received the information necessary to make a determination; that the Taxpayer 1 claim was not yet ready for decision; and that section 6103 prevented her from discussing certain matters with petitioner's counsel. In an email dated August 8, 2012, Ms. Stuart closed her message by stating: "As for your inquiry regarding [the Taxpayer 1] claim * * * , I believe you spoke to [an Office employee] about your concerns. I have included the Service's position on this topic. If you still have concerns you can contact me."

One concern petitioner's counsel had expressed was whether FBAR payments would be includable in "collected proceeds (including penalties, interest, additions to tax, and additional amounts)" that form the basis for an award under section 7623(b)(1). Aware of this concern, Ms. Stuart attached to her email a memorandum prepared for Stephen Whitlock by Mark S. Kaizen, Associate Chief Counsel, IRS General Legal Services, dated April 23, 2012. This memorandum articulates the legal foundation for the Office's position that FBAR payments,

**[\*6]** because they are made pursuant to title 31 rather than title 26 of the U.S. Code, are not "collected proceeds" within the meaning of section 7623(b)(1). The Office received this advice after it had sought guidance on the matter. Ms. Stuart attached this document to her email as a courtesy to petitioner.

Petitioner's counsel responded to Ms. Stuart by email the next day as follows: "Please confirm our reading of your email below that based on the Service's position expressed in the April 23, 2012 memo you attached your Office has now officially denied [the Taxpayer 1] Claim." At that time the Office had not determined whether the Taxpayer 1 claim merited an award because it had not yet learned from the operating side of the IRS whether or how petitioner's information was used, if at all, with respect to Taxpayer 1. Ms. Stuart accordingly responded to petitioner's counsel by email the next day, August 10, 2012, as follows:

> The [Taxpayer 1] claim * * * remains open. When the Whistleblower Office has made a determination related to the claims for award filed by [petitioner] you will be issued official written correspondence. At this point we have not made a determination regarding * * * any of the related claims. The Service's position expressed in the April 23, 2012 memo that I provided you was simply to let you know that at the point a determination can be made proceeds collected under Title 18 and/or Title 31 would not be considered as part of the claim.

Because the bulk of the proceeds collected from Taxpayer 1 consisted of FBAR payments for violation of title 31, petitioner decided that there was nothing

[*7] meaningful left for the Office to investigate with respect to this claim. Petitioner thus viewed Ms. Stuart's emails as a de facto determination that the Taxpayer 1 claim had been denied.

On September 6, 2012, petitioner filed a petition in this Court to challenge that supposed determination. On December 21, 2012, respondent filed a motion to dismiss this case for lack of jurisdiction. This motion contends that the IRS had not yet made a determination regarding an award sufficient to confer jurisdiction on this Court and that, in any event, petitioner's claim relates to title 31 and falls outside the scope of section 7623.

During July or August 2013 the Office received information from the IRS Criminal Investigation Division and the IRS Large Business and International Division that the Government had not used petitioner's information as a basis for taking action against Taxpayer 1. The Office thereafter issued to petitioner, on September 6, 2013, a letter that both parties agree constitutes a "determination" that petitioner's Taxpayer 1 claim has been denied. Petitioner filed a petition from that determination, and the matter is currently pending before the Court. See Whistleblower 22716-13W v. Commissioner, dkt. No. 22716-13W.

Petitioner nevertheless opposes respondent's motion to dismiss the instant case for lack of jurisdiction. We agree with the parties that, despite the filing of

**[\*8]** the second petition, the instant case is not moot but continues to present a justiciable case or controversy. Thus, we may decide whether to dismiss the instant case for lack of jurisdiction.

## OPINION

This Court always has jurisdiction to determine whether it has jurisdiction. Cooper v. Commissioner, 135 T.C. 70, 73 (2010). The Tax Court is a court of limited jurisdiction, and we must ascertain whether the case before us is one that Congress has authorized us to consider. See sec. 7442; Estate of Young v. Commissioner, 81 T.C. 879, 881 (1983). We may not enlarge upon the statutory grant of our authority. See Breman v. Commissioner, 66 T.C. 61, 66 (1976). In this case, we must decide whether communications between petitioner's counsel and Ms. Stuart establish that the IRS had made, as of August 10, 2012, a "determination regarding an award" within the meaning of section 7623(b)(4) sufficient to confer jurisdiction on this Court.

## I. Statutory Framework

The IRS has long had authority to pay awards to persons, now called "whistleblowers," who provide information leading to the recovery of unpaid taxes. See sec. 7623 (1954). The payment of such awards was solely discretionary for many years. In response to concerns about the management of the

**[\*9]** discretionary award regime, Congress enacted legislation in 2006 to address perceived problems with the whistleblower program. Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, div. A, sec. 406, 120 Stat. at 2958 (effective Dec. 20, 2006). The 2006 legislation added to section 7623 a new subsection (b), which requires the payment of nondiscretionary whistleblower awards in specified circumstances and provides this Court jurisdiction to review IRS determinations regarding such awards. See Cooper, 135 T.C. at 73. A claimant who does not meet the section 7623(b) requirements for a nondiscretionary award remains eligible for an award at the IRS' discretion under section 7623(a).

Section 7623(b)(1) requires payment of an award if the IRS proceeds with an administrative or judicial action to collect taxes "based on information brought to the Secretary's attention by an individual." The award amount must be at least 15% and not more than 30% of "the collected proceeds (including penalties, interest, additions to tax, and additional amounts) resulting from the action" or settlement thereof. Ibid. The determination of the amount "shall depend upon the extent to which the individual substantially contributed to such action." Ibid.[4]

---

[4]The IRS may determine a lower percentage award if the whistleblower makes a less substantial contribution to the recovery or if the whistleblower planned and initiated the activities leading to the underpayment of tax. Sec. 7623(b)(2) and (3). The IRS is directed to deny an award altogether if the whistle-
(continued...)

**[\*10]**  Section 7623(b)(5) defines the universe of claims that are subject to the

nondiscretionary award program established in subsection (b).  The IRS must pay

claims on a nondiscretionary basis only with respect to actions against a taxpayer

whose "gross income exceeds $200,000 for any taxable year subject to such

action" and only "if the tax, penalties, interest, additions to tax, and additional

amounts in dispute exceed $2,000,000."  Sec. 7623(b)(5)(A) and (B).

Section 7623(b)(4), captioned "Appeal of Award Determination," governs

our jurisdiction over whistleblower claims.  It provides:  "Any determination re-

garding an award under paragraph (1), (2), or (3) may, within 30 days of such

determination, be appealed to the Tax Court (and the Tax Court shall have juris-

diction with respect to such matter)."  By referring to determinations "under para-

graph (1), (2), or (3)," section 7623(b)(4) makes clear that we have jurisdiction to

review only determinations concerning nondiscretionary awards authorized by

subsection (b).

II.    Analysis

As jurisdictional provisions go, section 7623(b)(4) is rather unusual.  Unlike

most other sections of the Internal Revenue Code that confer jurisdiction on this

---

[4](...continued)
blower is convicted criminally for planning and initiating such activities.  Sec.
7623(b)(3).

**[\*11]** Court, section 7623(b)(4) does not prescribe any particular form of notice to the would-be petitioner. Indeed, it does not literally require that the IRS provide that person with written notice of any kind, but simply that it make a "determination." The statute's failure to specify an unambiguous "ticket to the Tax Court" has created serious interpretative and practical problems, both for whistleblowers and for the Court.

We addressed certain of these problems in Cooper v. Commissioner, 135 T.C. at 75. We there held that we have jurisdiction to review not only an IRS determination concerning the amount of an award but also "any determination to deny an award." In ascertaining whether the IRS has made a determination to deny an award, we held that "the labeling [of an IRS communication is] not dispositive" and "does not control whether the document constitutes a deter- mination." Ibid. We found that the letter issued in Cooper, while not labeled a determination, "states respondent's final conclusion that petitioner is not entitled to an award and provides an explanation for this conclusion." Id. at 76. Because the letter constituted "a final administrative decision regarding petitioner's whistleblower claims in accordance with the established procedures," we held that it constituted a "determination regarding an award" within the meaning of section

**[*12]** 7623(b)(4) and that we accordingly had jurisdiction to review it. 135 T.C. at 76.[5]

Under these standards, it seems clear that the email exchanges between Ms. Stuart and petitioner's counsel do not establish that the Office had made, as of August 10, 2012, a "determination" to deny the Taxpayer 1 claim. To the contrary, Ms. Stuart's email of that date stated that the Taxpayer 1 claim "remains open" and that petitioner would "be issued official written correspondence" once the Office <u>did make</u> a determination regarding this claim. As of August 10, 2012, the Office was still waiting to hear from the relevant IRS operating divisions whether the information petitioner supplied had led to the action against Taxpayer 1. This is an essential element that must be satisfied before the IRS can make a nondiscretionary award determination under section 7623(b)(1). Since the Office was still investigating this issue, it had not yet made "a final administrative decision

---

[5]Consistently with our Opinion in <u>Cooper</u>, 135 T.C. at 75, we have held that the labeling of an IRS communication is not dispositive in ascertaining whether it has made a "determination" sufficient to afford us jurisdiction under other Code provisions. <u>See, e.g.</u>, <u>SECC v. Commissioner</u>, 142 T.C. __, __ (slip op. at 7) (Apr. 3, 2014) (IRS letter was a "determination" concerning worker classification for purposes of section 7436(a)); <u>Corbalis v. Commissioner</u>, 142 T.C. __, __ (slip op. at 21-22) (Jan. 27, 2014) (IRS letter was a "determination" concerning interest abatement for purposes of section 6404(h)).

[*13] regarding petitioner's whistleblower claim[] in accordance with the established procedures." See Cooper, 135 T.C. at 76.

In urging a contrary conclusion, petitioner relies on what he regards as the plain meaning of the word "any." See sec. 7623(b)(4). According to petitioner: "Congress chose not to limit this broadest of jurisdictional delegations with modifiers on the word 'any' such as 'dispositive' or 'material.'" Petitioner contends that we should not read into the statute any limiting language and that "'any determination regarding an award' means just that."

We are not persuaded. In her August 10, 2012, email, Ms. Stuart informed petitioner's counsel that the Office had received legal advice that FBAR payments cannot be included in "collected proceeds" for purposes of making awards under section 7623(b). She accordingly advised him that, "at the point a determination can be made," proceeds collected under title 31 "would not be considered as part of the claim." As we held in Cooper, 135 T.C. at 75, a "determination regarding an award" means a determination as to "the amount of an award" or a determination "to deny an award." Congress cannot possibly have intended that this phrase would embrace every subsidiary finding of fact or conclusion of law that enters into the Office's ultimate decision as to whether an award is appropriate and (if so) the amount thereof.

**[*14]** Even if the Office's policy decision concerning FBAR payments, considered in isolation, does not constitute a "determination regarding an award," petitioner insists that it constitutes a de facto determination on the particular facts of this case. That is so, petitioner contends, because more than 99% of the aggregate recovery from Taxpayer 1 consisted of FBAR payments. According to petitioner, this demonstrates that the Office had "nothing left to investigate" regarding this claim once it concluded that the FBAR component could not qualify.

Contrary to petitioner's assertion, there <u>was</u> something left for the Office to investigate--namely, whether the action against Taxpayer 1 was "based on information brought to the Secretary's attention by [petitioner]" and, if so, whether the information petitioner provided had "substantially contributed" to that recovery. <u>See</u> sec. 7623(b)(1). Section 7623(b)(4) gives us jurisdiction to review "any determination regarding an award under paragraph (1), (2), or (3)." The IRS cannot make a "determination" under paragraph (1) until it has completed its review of all elements specified in that paragraph. The Office did not receive from the IRS operating divisions, until July or August 2013, the information necessary to ascertain whether the action against Taxpayer 1 was "based on information brought to the Secretary's attention by [petitioner]" or whether petitioner's information "sub

[*15] stantially contributed" to that recovery.  Only then was the Office in a position to make a conclusive "determination" regarding the Taxpayer 1 claim.

This holding is supported not only by the statute's language but also by sound principles of judicial policy.  It is the policy of this Court "to try all the issues raised in a case in one proceeding to avoid piecemeal and protracted litigation." Haft Trust v. Commissioner, 62 T.C. 145, 147 (1974).  The goal of this policy is to avoid the inefficiency and duplication of effort, with its "attendant delay and waste of time," that piecemeal litigation inevitably entails.  See Kovens v. Commissioner, 91 T.C. 74, 78 (1988).  As the facts of this case show, our assumption of jurisdiction before the Office has concluded its entire investigation would necessarily lead to piecemeal litigation.

When petitioner filed his petition in our Court, the Office had not yet ascertained whether his information had led to action against Taxpayer 1.  Suppose that we had taken jurisdiction of this case and decided the question petitioner poses-- whether FBAR payments constitute "additional amounts" within the meaning of section 7623(b)(1) and (5)(B) and are thus properly includable in the basis for a nondiscretionary award.  We now know that the Office concluded, after petitioner filed the instant petition, that his information did not lead to the recovery from Taxpayer 1, so that he would not be entitled to an award regardless of whether

**[*16]** FBAR payments constitute "additional amounts." If that conclusion is correct, the FBAR question would then be moot, and our opinion addressing this issue would be an advisory opinion. This demonstrates the practical importance of allowing the Office to conclude all aspects of its investigation and render "a final administrative decision * * * in accordance with the established procedures," Cooper, 135 T.C. at 76, before we undertake review of an award determination.

Accepting petitioner's interpretation of section 7623 would produce absurd or futile results, and a well-established rule of statutory construction is to avoid such outcomes. See Colestock v. Commissioner, 102 T.C. 380, 387 (1994) (citing United States v. Am. Trucking Ass'ns, 310 U.S. 534, 543-544 (1940). Undertaking premature review of whistleblower claims would inevitably lead to piecemeal litigation and prevent us from trying all issues in one case. Both the plain language of the statute and principles of judicial policy thus support the conclusion that the instant petition is premature and that we lack jurisdiction over it.

III. Foreign Bank Account Reporting

In the alternative, respondent contends that this Court lacks jurisdiction because payments under title 31 are outside the scope of section 7623(b)(5)(B) and are therefore outside the scope of our jurisdiction under section 7623(b)(4). Petitioner agrees that this issue is jurisdictional and urges that the Court resolve it.

[*17] Because we have concluded that the Office did not make a "determination" within the meaning of section 7623(b)(4) sufficient to confer jurisdiction on this Court, we need not decide whether FBAR payments are "additional amounts" for purposes of ascertaining whether the monetary threshold in section 7623(b)(5) has been met, or whether that question is a jurisdictional one.  See Friedland v. Commissioner, T.C. Memo. 2011-217, 102 T.C.M. (CCH) 247, 249 (not addressing the monetary threshold question when granting respondent's motion to dismiss for lack of jurisdiction).

To reflect the foregoing,

An order of dismissal for lack of jurisdiction will be entered.