148 T.C. No. 19

UNITED STATES TAX COURT

WHISTLEBLOWER 4496-15W, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4496-15W. Filed May 25, 2017.

P filed with the IRS Whistleblower Office (Office) Form 211, Application for Award for Original Information, with respect to TP(s). The Office offered P an award that had been reduced by 7.3% on account of the "sequester" imposed by the Budget Control Act of 2011. P accepted this award and, in exchange for prompt payment, waived his judicial appeal rights. The Office subsequently issued P a check in the agreed-upon amount. After cashing the check P filed a petition challenging the 7.3% reduction of his award. R moved to dismiss.

1. Held: The Office's issuance of the check to P constituted its "determination" that he was entitled to an award in the agreed-upon amount. I.R.C. sec. 7623(b)(4). Because P filed his petition within 30 days of the date on which the check was mailed to him, we have jurisdiction to decide whether his waiver of his judicial appeal rights was valid and binding.

2. Held, further, P's agreement with the Office, whereby he explicitly waived his right to seek judicial review of the award, is binding on him, and he is precluded from challenging the amount of the award in this Court.

Thomas C. Pliske and Shine Lin, for petitioner.

John T. Arthur, Patricia P. Davis, and Richard L. Hatfield, for respondent.

OPINION

LAUBER, Judge: This whistleblower award case is before the Court on a motion to dismiss for lack of jurisdiction filed by the Internal Revenue Service (IRS or respondent). In the case of nondiscretionary whistleblower awards, section 7623(b)(4) provides: "Any determination regarding an award * * * may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)."[1] The IRS Whistleblower Office (Office) offered petitioner an award that had been reduced by 7.3% on account of the "sequester" imposed by the Budget Control Act of 2011. Petitioner accepted this award. In his acceptance letter he agreed to "waive all of * * *

[1]All statutory references are to the Internal Revenue Code in effect at the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[his] administrative and judicial appeal rights," including his "right to petition the United States Tax Court." The Office subsequently issued petitioner a check in the agreed-upon amount. After cashing that check he filed a petition challenging the 7.3% reduction of his award on account of the "sequester."

We must first ascertain the date on which the IRS made the "determination" that triggered the start of the 30-day jurisdictional filing period. We hold that the Office made the "determination" in question when it issued the check to petitioner. Because he filed his petition within 30 days of the date on which the check was mailed to him, we conclude that we have jurisdiction to decide the validity of his waiver. On that point, we hold that petitioner is bound by his knowing and explicit waiver of his judicial appeal rights and hence that he may not contest the award that he accepted. Treating respondent's motion to dismiss in this respect as a motion for summary judgment, we will grant the motion.

## Background

The following facts are derived from the parties' pleadings and motion papers, including the exhibits attached thereto.[2] In December 2008 petitioner filed

---

[2]The Court granted petitioner's motion to proceed anonymously. When referring to petitioner, we will employ the masculine pronoun and possessive adjective without intending to create any implication concerning petitioner's gender.

Form 211, Application for Award for Original Information. The IRS collected proceeds from the target(s) identified by petitioner and concluded that he was entitled to an award under section 7623(b). On December 1, 2014, the Office mailed him a "preliminary award letter."

The first paragraph of this letter stated: "Enclosed is a Summary Report that explains our preliminary award recommendation in the amount of $2,954,933." The second paragraph explained that "[t]he Budget Control Act of 2011 * * * requires that certain automatic reductions take place as of March 1, 2013. These required reductions include a reduction to awards paid under * * * section 7623. As a result, your recommended award has been reduced by 7.3%." The third paragraph explained that awards payable under section 7623 "are subject to federal tax reporting and withholding requirements. Accordingly, the IRS withholds tax from award payments that exceed $10,000."

The Summary Report explained, in five numbered lines, how the preliminary award recommendation amount was computed:

> 1. Tax, Penalties, interest, and other amounts collected based on information provided by Whistleblower: $14,489,227
> 2. Recommended Award Percentage: 22%
> 3. Collected proceeds (Line 1) × recommended award percent (Line 2): $3,187,630
> 4. Budget Control Act reduction (Line 3 amount × 7.3 percent): $232,697

5. Award after Budget Control Act Reduction (Line 3 less Line 4): $2,954,933

Following line 5, the Summary Report reiterated that the 2011 Budget Control Act "requires that certain automatic reductions take place as of March 1, 2013."

The preliminary award letter explained that petitioner had various options. If he agreed with the award, he was directed to "check the appropriate box, sign and date the Response to Summary Report indicating * * * [his] agreement," and "return the signed Response" to the Office. The letter explicitly informed petitioner that, "[b]y checking the box that you agree with the preliminary award recommendation, you agree to waive any judicial appeal rights with respect to the award determination, including filing a petition with the U.S. Tax Court." If petitioner submitted a signed Response accepting the preliminary award recom-mendation, the letter stated that "the award will be processed for payment," with payment being made "as promptly as the circumstances permit." "Reasons why a delay in payment may occur," the letter noted, "include when there is not yet a final determination of tax and when multiple whistleblowers have claimed an award with respect to the same tax liability."

If petitioner disagreed with the preliminary award recommendation, the let-ter invited him to submit comments to the Office immediately or to submit com-

ments after executing a Confidentiality Agreement and reviewing additional information that the Office would provide. See sec. 301.7623-3(c)(2), Proced. & Admin. Regs. In either event the Office informed petitioner that "[a]ny comments that we receive will be considered in making the final determination." The letter emphasized: "This letter is NOT a final determination for purposes of filing a petition with the United States Tax Court."

On December 8 and 9, 2014, petitioner's counsel communicated with the Office about the preliminary award recommendation. These interchanges revealed that petitioner was content with the basic award determination but questioned the $232,697 reduction on account of the "sequester." His lawyer asked whether, if petitioner accepted the award with the $232,697 reduction, the IRS would later pay him an additional $232,697 if a court were to hold the sequestration reduction to have been improper. The Office replied: "No. The IRS will not subsequently compensate whistleblowers. If a [whistleblower] agrees to the award determination * * * the matter is concluded." Alternatively, petitioner's counsel asked whether the IRS would accept petitioner's agreement to the preliminary award recommendation subject to "an adjustment for the sequestration reduction if a court subsequently determines that the IRS had no legal basis" for making this

reduction. The Office responded: "No. We do not accept proposals for agreements that accept part of a determination."[3]

By letter dated December 15, 2014, petitioner's counsel sent the Office a Response to Summary Report accepting the award. Petitioner signed this Response form on December 10, his counsel signed it on December 13, and the Office received it on December 30. On this Response form petitioner checked the box captioned as follows:

> I agree with the preliminary award recommendation and accept it as the award determination. I waive all of my administrative and judicial appeal rights with respect to the award determination, including my right to petition the United States Tax Court.

By opting to leave the other boxes unchecked, petitioner indicated that he did not wish to "disagree with the preliminary award recommendation," to "provide comments regarding the Summary Report," or to "receive a more detailed explanation of the award recommendation" after signing the confidentiality agreement and reviewing additional documentation.

---

[3]Although the preliminary award letter stated unambiguously that the Office was offering a "preliminary award recommendation in the amount of $2,954,933," petitioner's counsel expressed uncertainty in an email exchange on December 8, stating: "If I sign the agreement, I am still not sure what number I am agreeing to." The Office replied that he was agreeing to $2,954,933, viz., "the award recommendation payable net of the sequester reduction," which was "Line 3 less Line 4" in the table set forth in the preliminary award letter.

Approximately two weeks after receiving petitioner's Response form, the Office sent him a check dated January 15, 2015, in the amount of $2,135,826. This figure represented the award petitioner had accepted, $2,954,933, less Federal income tax withholding of $819,107. On February 11, 2015, petitioner sought review in this Court, characterizing the January 15, 2015, check as a "final notice of determination" issued to him by the Office. He contends that the Office lacked legal support for reducing his recommended award by 7.3% on account of the "sequester." Respondent has moved to dismiss for lack of jurisdiction.

## Discussion

### A. Jurisdiction

The Tax Court is a court of limited jurisdiction, and we must ascertain whether the case before us is one that Congress has authorized us to consider. See sec. 7442; Estate of Young v. Commissioner, 81 T.C. 879, 881 (1983). In determining whether we have jurisdiction over a given matter, this Court and the Courts of Appeals have given our jurisdictional provisions a broad, practical construction rather than a narrow, technical one. Lewy v. Commissioner, 68 T.C. 779, 781 (1977). When a statute is capable of two interpretations, "we are inclined to adopt a construction which will permit us to retain jurisdiction without doing violence to the statutory language." Traxler v. Commissioner, 61 T.C. 97, 100 (1973).

In his motion to dismiss for lack of jurisdiction, respondent contends that we lack jurisdiction because petitioner did not file his petition within 30 days of the Office's "determination." This Court has developed a fairly robust body of case law addressing the question of when a "determination" is made in cases where the Office declines to make an award. See, e.g., Kasper v. Commissioner, 137 T.C. 37, 45 (2011); Cooper v. Commissioner, 135 T.C. 70, 75-76 (2010). But we do not appear to have addressed this timing issue in a case (such as this) where the Office has notified the whistleblower that an award will be forthcoming.

The December 1, 2015, preliminary award letter explicitly stated that it was "NOT a final determination for purposes of filing a petition with the United States Tax Court." That being so, respondent initially contended that the Office's "determination" should be regarded as having been made either on the date on which petitioner signed the Response form (December 10, 2015) or the date on which the Office received that form (December 30, 2015). Both dates are more than 30 days from February 11, 2015, when petitioner filed his petition. Petitioner contends that the Office made its "determination" when it issued him a check in payment of his award and that his petition was filed timely within 30 days of that date.

On this point respondent now seems to agree with petitioner. In supplemental briefing submitted at the Court's request, respondent confirmed that the

Office "effectuates an agreed award by making payment of the agreed amount, and until the agreed award is paid, there can be no determination." Respondent acknowledges that "it is possible for the recommended award amount contained in a preliminary award recommendation to change," e.g., because "the target taxpayer could receive a refund, reducing the amount of collected proceeds, and thereby reducing the amount of any recommended award." Thus, the award a whistleblower can expect to receive "remains subject to change until respondent makes a final award determination or issues an award payment for any agreed award."

Although we are not bound by the parties' views with respect to our jurisdiction, Ringo v. Commissioner, 143 T.C. 297 (2014), we agree that, on the facts involved here, the 30-day window must be calculated by reference to the issuance of the award check. In the case of a favorable award decision, the Office's "determination" denotes a decision that the whistleblower will receive an award in a specific amount. As respondent acknowledges, the award that the Office proposed in its December 1, 2014, letter remained uncertain even after petitioner accepted it, because it was subject to conditions subsequent that could cause the award amount to be reduced. Petitioner received no intervening communication from the Office (such as a determination letter) confirming the final amount of his award. That being so, on the basis of the regulations that existed at that time he could not know

that he would actually receive an award in the agreed-upon amount until the check was in fact issued to him.[4]

This conclusion is consistent with the framework set forth in the regulations, which specify different procedures for favorable and adverse decisions on whistleblower claims.[5] If the Office concludes that a whistleblower is entitled to an award, it prepares and sends him a "preliminary award recommendation." See sec. 301.7623-3(c)(1), Proced. & Admin. Regs. This document must notify the whistleblower that "the IRS cannot determine or pay any award until there is a final determination of tax."[6] Ibid. If the whistleblower takes no action in response to the preliminary award recommendation, the Office will issue a determination letter. Id. subpara. (3). But if, as here, "the whistleblower has executed an award

[4]Respondent noted on brief that the Office plans to revise its "preliminary award letter" to clarify that if, the preliminary award amount changes after the whistleblower submits his Response form accepting the award, the whistleblower will have the opportunity to seek further administrative and judicial review with respect to the revised award amount.

[5]These regulations, finalized on August 12, 2014, apply to information submitted on or after that date, and to claims for award under section 7623(b) that were then open. See T.D. 9687, 2014-36 I.R.B. 486.

[6]A "final determination of tax" is deemed to have occurred if the IRS has collected the relevant proceeds and either (1) the statutory period for filing a refund claim has expired or (2) the target(s) have agreed to the tax liability and waived any right to seek a refund. Sec. 301.7623-4(d)(2), Proced. & Admin. Regs.

consent form agreeing to the amount of the award and waiving the whistleblower's right to appeal the award determination," the Office "will not send * * * a determination letter and will make payment of the award as promptly as circumstances permit." Id. subpara. (6).

As we have noted before, section 7623(b)(4) is unusual as a jurisdiction-conferring provision because it "does not prescribe any particular form of notice to the would-be petitioner." Whistleblower 22231-12W v. Commissioner, T.C. Memo. 2014-157, 108 T.C.M. (CCH) 124, 126. In prior cases, "[w]e have held that the name or label of a document does not control whether the document constitutes a determination" and that "our jurisdiction is established when the Commissioner issues a written notice that embodies a determination." Cooper, 135 T.C. at 75. In this case the Office did not issue a final determination letter confirming the amount of petitioner's award. We accordingly hold that the Office "issue[d] a written notice that embodie[d] * * * [its] determination" by issuing the award check and that this action notified petitioner of the "final administrative decision regarding * * * [his] * * * claims in accordance with the established procedures." Id. at 75-76. Because petitioner filed his petition within 30 days of the date on which that check was mailed to him, we have jurisdiction to decide this case.

B. Waiver of Appeal Rights

The second argument advanced by respondent in his motion to dismiss for lack of jurisdiction is that petitioner, by accepting the award, waived his right to challenge that award in this Court. This does not appear to be an argument that we lack jurisdiction to decide this case. Rather, it is an argument that we should assume jurisdiction and decide the "waiver" issue against petitioner.[7]

Under these circumstances we will recharacterize respondent's motion to dismiss (in part) as a Rule 121 motion for summary judgment. Doing so will not prejudice petitioner, because all relevant facts are agreed and the dispositive question is a legal issue that petitioner fully addressed in responding to the motion. See Del-Co W. v. Commissioner, T.C. Memo. 2015-142, 110 T.C.M. (CCH) 119, 120. We find that there are no disputed issues of material fact concerning this question and that a decision on the validity of petitioner's waiver may appro-

---

[7]Respondent errs in citing Tree-Tech, Inc. v. Commissioner, T.C. Memo. 2011-162, 102 T.C.M. (CCH) 31, for the proposition that we lack jurisdiction in these circumstances. In that case we held that we lacked jurisdiction because the taxpayer had not received a notice of determination concerning worker classification or any other notice that served as a "ticket" to the Court. See id., 102 T.C.M. (CCH) at 35. Here, we have jurisdiction because the Office furnished petitioner with notice of its "determination" by issuing him the award check, and he timely petitioned this Court.

priately be rendered as a matter of law. See Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).

In a Federal tax case, a settlement agreement outside the scope of section 7121 or 7122 may be reached through offer and acceptance evidenced by an exchange of letters or even in the absence of a writing. Lamborn v. Commissioner, T.C. Memo. 1994-515. Under principles of contract law, we enforce such settlements as binding agreements. Haiduk v. Commissioner, T.C. Memo. 1990-506, 60 T.C.M. (CCH) 864, 866 ("The compromise and settlement of tax cases is governed by general principles of contract law."). Taxpayers often waive the right to seek judicial review in connection with resolution of tax disputes, and this Court and others have regularly enforced such agreements. See Smith v. United States, 328 F.3d 760, 766-767 (5th Cir. 2003) (ruling that taxpayers waived judicial review in this Court by signing Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment); Aguirre v. Commissioner, 117 T.C. 324, 327 (2001) (ruling for IRS in part because taxpayers signed Form 4549, Income Tax Examination Changes, by which they "explicitly waived the right to contest in the Tax Court their tax liability" for the years at issue); Estate of Duncan v. Commissioner, T.C. Memo. 2016-204, at *16 (same); Estate of Deese v. Commissioner, T.C. Memo. 2007-362 (ruling that

taxpayers waived judicial review in this Court by signing Form 870-AD, Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment).

Here, upon accepting the award, petitioner expressly waived the judicial appeal rights he would otherwise have had with respect to the Office's determination. He signed the Response to Summary Report and checked the box confirming that he "agree[d] with the preliminary award recommendation and accept[ed] it as the award determination." He waived all of his "administrative and judicial appeal rights with respect to the award determination, including * * * [his] right to petition the United States Tax Court." In exchange for waiving his judicial appeal rights petitioner obtained the benefit of his bargain with the IRS by receiving immediate payment of the agreed-upon award (viz., $2,954,933 less Federal income tax withholding of $819,107).

Petitioner signed the Response form waiving his judicial appeal rights in order to obtain prompt payment of his award. His effort to obtain the benefit of immediate payment while later seeking judicial review directly contravenes the regulatory framework, which provides for payment only after all issues have been

finally determined. By seeking judicial review after explicitly waiving his right to seek judicial review, petitioner violated his agreement with the Office.[8]

Petitioner advances three principal contentions in urging that we give no effect to his waiver. First, he notes that Congress has conferred upon this Court exclusive subject matter jurisdiction to review whistleblower awards. "Should the Court decline * * * to review Respondent's administrative determination," he says, "the Court will deny [him] the only venue appropriate to review the sufficiency" of the Office's decision.

This argument is wholly unconvincing. Petitioner had an obvious avenue for securing judicial review of the "sequester" reduction that the Office believed to be required. He could have disagreed with the preliminary award recommendation and submitted comments expressing his disagreement, with or without reviewing additional documentation from the Office. Had he done so and had the Office stuck to its guns, he would have received a final determination letter from which he could have appealed to this Court. Instead he chose to get his cash immediately and (in consideration thereof) waived his right to seek judicial review. He has no

---

[8]We need not consider whether petitioner's waiver would be given effect if the Office had invoked a "condition subsequent" and reduced the amount of the award specified in the preliminary award recommendation.

one but himself to blame for the unavailability of a judicial venue for review of his "sequester" claim.

Second, petitioner contends that his waiver was invalid because the parties did not have a "meeting of the minds." According to petitioner, the documents setting forth the proposed award "caused confusion and are ambiguous." Specifically, petitioner contends that the preliminary award letter and attached Summary Report did not clearly explain whether the "award" to which he was agreeing was $3,187,630 (the gross amount unreduced by the "sequester") or $2,954,933 (the net amount after reduction by the "sequester").

On this point we discern no ambiguity in the documents that collectively constitute the parties' agreement. The preliminary award letter explicitly stated that the Office was offering a "preliminary award recommendation in the amount of $2,954,933." That letter does not even mention the $3,187,630 figure. The next paragraph recited the requirements of the 2011 Budget Control Act and informed petitioner that "your recommended award has been reduced by 7.3%." (Emphasis added.) There was nothing ambiguous about this letter: It told petitioner in plain terms that his award, net of reduction on account of the sequester, was $2,954,933.

The Summary Report that the Office enclosed with its letter was equally unambiguous. In five bolded lines it walked petitioner through the award calculation. Line 3 showed $3,187,630 as the "collected proceeds" multiplied by the recommended award percentage of 22%. Line 4 showed $232,697 as the Budget Control Act reduction (Line 3 × 7.3%). Line 5 showed $2,954,933 as the "Award after Budget Control Act Reduction," i.e., "Line 3 less Line 4." The Summary Report, consistently with the preliminary award letter, clearly informed petitioner that the Office was offering him an award of $2,954,933.

Petitioner urges that his email exchanges with the Office left him confused about the size of the award he was accepting. Where (as here) an agreement is unambiguous in its essential terms, we confine our examination to the "four corners" of the agreement and do not consider extrinsic or parol evidence. See Silverman v. Commissioner, 105 T.C. 157, 161 (1995), aff'd, 86 F.3d 260 (1st Cir. 1996); Rink v. Commissioner, 100 T.C. 319, 325 (1993), aff'd, 47 F.3d 168 (6th Cir. 1995). But even if we were to consider these email exchanges, they would not lead to a different result. When petitioner displayed uncertainty about "what number * * * [he was] agreeing to," the Office replied that he was agreeing to $2,954,933, viz., "the award recommendation payable net of the sequester reduc-

tion," which was "Line 3 less Line 4" in the calculation set forth in the preliminary award letter.

In general, settlements reached before a petition is filed with this Court will not be set aside "absent fraud or mutual mistake." Dutton v. Commissioner, 122 T.C. 133, 138 (2004); see Callen v. Pa. R. Co., 332 U.S. 625, 630 (1948); Estate of Jones v. Commissioner, 795 F.2d 566, 573-574 (6th Cir. 1986), aff'g T.C. Memo. 1984-53. A party's unilateral mistake, by contrast, generally will not suffice to invalidate a contract unless it was induced in some way by the other party. See Estate of Caporella v. Commissioner, 86 T.C. 285, 298 (1986), aff'd, 817 F.2d 706 (11th Cir. 1987).[9] If there was any mistake concerning the magnitude of the award the Office was offering, we find that it was a unilateral mistake on petitioner's part and that this mistake was not induced by respondent.

---

[9]In Wakefield v. Commissioner, T.C. Memo. 2015-4, 109 T.C.M. (CCH) 1016, 1020 n.12, we explained a "unilateral mistake" as follows:

> As with a contract, * * * a unilateral mistake generally will not justify relief from an otherwise valid stipulation. * * * Nor will it support adoption of the mistaken party's interpretation. See Korangy v. Commissioner, T.C. Memo. 1989-2, 56 T.C.M. (CCH) 989, 991 (1989) ("If the mistake of one party to a written instrument is in thinking that it contains a larger promise by the other party than in fact it does, and the other party has no reason to know of this mistake, of course the mistaken party cannot hold the other to the larger promise that he did not make[.]" (quoting 3 Corbin on Contracts, sec. 608 (1960))), aff'd, 893 F.2d 69 (4th Cir. 1990).

Finally, noting that he received a check for $2,135,826 and not $2,954,933, petitioner asserts that he is not bound by his waiver because the IRS committed "a breach of the contract." But as petitioner acknowledges, the difference between these amounts, $819,107, is solely attributable to Federal income tax withholding. The preliminary award letter explicitly advised petitioner that awards payable under section 7623 "are subject to federal tax reporting and withholding requirements. Accordingly, the IRS withholds tax from award payments that exceed $10,000." In his petition he acknowledged that the $819,107 represented "withholding of taxes" and was computed as 39.6% (the top marginal tax rate) times $2,068,453 (the "amount payable to petitioner after sequestration and attorney fees").

By accepting the award petitioner agreed that Federal income tax would be withheld from it. He does not appear to contend that the amount withheld was incorrect. And even if the amount withheld were incorrect, petitioner would report that amount as a payment on his 2015 tax return, i.e., as "Federal income tax withheld" on line 64, Form 1040, U.S. Individual Income Tax Return. In effect, he would get a credit for the withholding tax paid. Because the amount of the check ($2,135,826) plus the amount of the credit ($819,107) equals $2,954,933, the agreed-upon award, petitioner received the full amount that he had bargained for.

The Office did not breach its contract with petitioner by withholding tax, and his waiver was valid.

In sum, petitioner waived his judicial appeal rights in order to receive prompt payment of his award, and the Office fully performed its side of the bargain. We will accordingly enforce the agreement reached by the parties, give effect to petitioner's waiver of his right to judicial review, and grant summary judgment for respondent sustaining the Office's determination.[10]

[10]Petitioner attempts to do an end run around his waiver, and obtain judicial review of his contention that the "sequester" reduction was improper, by contending the Office lacked statutory authority to implement the sequester and hence that his agreement with the Office (including the waiver) was "illegal and * * * unenforceable." This argument does not hold water. Even if the Office were incorrect in its belief that a sequester reduction was required, this would not render the parties' agreement "illegal." When a controversy is settled, it often happens that a party has available to it a legal argument that it elects not to pursue because it desires closure in the form of an immediate settlement. That is precisely the situation here: Petitioner could have chosen to pursue his legal theory that the Office lacked statutory authority to implement the "sequester," but he chose to waive that right because he wished to receive his multi-million-dollar award immediately. He cannot plausibly contend that his agreement with the Office is "illegal" on the basis of an argument that he waived the right to make.

To reflect the foregoing,

An order will be entered denying respondent's motion to dismiss for lack of jurisdiction and granting summary judgment for respondent.